Chad Colton, Bar No. 065774
Chad.Colton@ashurstperkins.com
David Watnick, Bar No. 223386
David.Watnick@ashurstperkins.com
Michael McCullough, Bar No. 225377
Michael.McCullough@ashurstperkins.com
**ASHURST PERKINS COIE US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: (503) 727-2000

*Attorneys for Defendants Wampler, Carroll,
Wilson & Sanderson, P.L.L.C. and J. Luke
Sanderson*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON, PORTLAND DIVISION

| | |
|---|---|
| BAEK FAMILY PARTNERSHIP, LLC, an Oregon limited liability company, AB HOLLYWOOD, LLC, an Oregon limited liability company, MY, LLC, an Oregon limited liability company, and THE PENNEY KIM TRUST, by and through its Trustee, PENNEY KIM, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WAMPLER, CARROLL, WILSON & SANDERSON, P.L.L.C., a Tennessee professional corporation, WADE LAW, LLC, a Tennessee limited liability company, J. LUKE SANDERSON, an individual, and B.J. WADE, an individual, JESSICA MOLLIGAN, an individual, and JOHN DOES 1 – 50, <br><br> Defendants, <br><br> v. <br><br> CONNER SLEVIN, an individual, and JOHN DOES 51 - 100, <br><br> Nominal Defendant. | Case No. 3:25-cv-00584-AN <br><br><br> **WAMPLER DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** <br><br><br> **REQUEST FOR ORAL ARGUMENT** |

WAMPLER DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

187735047.5

## TABLE OF CONTENTS

LOCAL RULE 7-1 CERTIFICATION ....................................................................... 1

MOTION............................................................................................................... 1

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 3

I.      Private plaintiff litigation is the linchpin of meaningful ADA enforcement. ................... 3

II.     Plaintiffs assert that the Wampler Parties' ADA enforcement actions are an illegal racketeering scheme................................................................................................. 5

III.    The Wampler Parties' ADA enforcement actions largely succeeded; local counsel in *one case* was sanctioned. ................................................................. 7

LEGAL STANDARD........................................................................................... 10

ARGUMENT....................................................................................................... 10

I.      Plaintiffs cannot state a RICO claim........................................................ 10

        A.      The litigation misconduct Plaintiffs allege cannot serve as RICO predicate acts of wire fraud. ...................................................................... 11

        B.      Plaintiffs have not adequately alleged any "predicate acts" of wire fraud. ......... 14

                1.      Plaintiffs' allegations do not establish the elements of wire fraud. ......... 15

                        (a)     Defendants' demand letters and draft complaints do not contain actionable misrepresentations.                 15

                        (b)     Plaintiffs' allegations regarding local counsel's settlement authority do not state a claim for wire fraud against the Wampler Parties.                 18

                2.      Plaintiffs' undifferentiated allegations about "thousands" of demand letters do not satisfy Rule 9(b)'s heightened pleading standard. ................................................................... 19

        C.      Plaintiffs' RICO claim is independently barred by the *Noerr-Pennington* doctrine. ................................................................... 20

                1.      The underlying ADA cases are petitioning activities protected by the First Amendment under *Noerr-Pennington*. ..................................... 20

                2.      The "sham litigation" exception to *Noerr-Pennington* does not apply.................................................................... 22

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

ii-    TABLE OF CONTENTS

187735047.5

**TABLE OF CONTENTS**

II.      Plaintiffs' equitable accounting claim should be dismissed with their RICO claim. ...... 24

CONCLUSION .................................................................................................................. 25

187735047.5

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

# TABLE OF AUTHORITIES

### CASES

*Abbondanza v. Weiss*,
2022 WL 889099 (D. Colo. Mar. 24, 2022) ...........................................................13

*Acres Bonusing, Inc. v. Ramsey*,
2022 WL 17170856 (N.D. Cal. Nov. 22, 2022) ......................................................11, 12, 14

*Adidas Am., Inc. v. TRB Acquisitions LLC*,
2017 WL 337983 (D. Or. Jan. 23, 2017) .......................................................21, 22

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
643 F.3d 1165 (9th Cir. 2010) ....................................................................1

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) ...................................................................10

*Burley-Beavers v. Abraham Lee 4511*,
LLC, No. 3:23-cv-01411-HZ, ECF No. 15 (D. Or. Feb. 20, 2024) ..........................................8

*Chapman v. Pier 1 Imps. (U.S.), Inc.*,
631 F.3d 939 (9th Cir. 2011) ...................................................................16

*Doran v. 7-Eleven, Inc.*,
524 F.3d 1034 (9th Cir. 2008) .......................................................3, 16, 23

*Edwards v. Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004) .................................................................10

*Ghandi v. Ehrlich*,
2020 WL 5633416 (N.D. Ga. Sept. 21, 2020) .......................................12, 13, 14

*Grey v. Salameh*,
No. 2:24-cv-02363-JPM-cgc, ECF No. 17 (W.D. Tenn. Sept. 11, 2024)................................4

*Grimmett v. Brown*,
75 F.3d 506 (9th Cir. 1996) ...................................................................10

*H.J., Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989)...........................................................................10, 19

*Jordan v. Joe B. Beasley & Assocs., L.P.*,
No. 3:23-cv-00496, ECF No. 70...................................................................24

i-    TABLE OF AUTHORITIES

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

187735047.5

*Killa Bees Distribution LLC v. Left Coast Fin. Sols., Inc.*,
   2025 WL 3056657, at *10 (D. Or. Oct. 14, 2025), *report and recommendation
   adopted*, 2025 WL 3055771 (D. Or. Oct. 31, 2025)...............................................................20

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018)......................................................................................................11

*Kottle v. Nw. Kidney Ctrs.*,
   146 F.3d 1056 (9th Cir. 1998) ...............................................................................................22

*Langer v. Kiser*,
   57 F.4th 1085 (9th Cir. 2023) ...................................................................................................4

*Liberty Lake Invs., Inc. v. Magnuson*,
   12 F.3d 155 (9th Cir. 1993) .............................................................................................23, 24

*Little v. Grand Canyon Univ.*,
   516 F. Supp. 3d 958 (D. Ariz. 2021) .....................................................................................10

*Metaxas v. Lee*,
   503 F. Supp. 3d 923 (N.D. Cal. 2020) ...................................................................................19

*Molski v. Evergreen Dynasty Corp.*,
   500 F.3d 1047 (9th Cir. 2007) (per curiam)............................................................................4

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*,
   2020 WL 5239856 (C.D. Cal. Aug. 3, 2020)........................................................................24

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) .................................................................................................10

*Neal v. Second Sole of Youngstown, Inc.*,
   2018 WL 340142 (N.D. Ohio Jan. 9, 2018)......................................................................12, 14

*Neder v. United States*,
   527 U.S. 1 (1999)...............................................................................................................15, 17

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd*,
   790 F. Supp. 2d 1134 (CD. Cal. 2011) ..................................................................................20

*PGA Tour, Inc. v. Martin*,
   532 U.S. 661 (2001)..................................................................................................................1

*Pickern v. Holiday Quality Foods Inc.*,
   293 F.3d 1133 (9th Cir. 2002) .............................................................................................3, 16

*Relevant Grp., LLC v. Nourmand*,
   116 F.4th 917 (9th Cir. 2024) ............................................................................................22, 23

ii-    TABLE OF AUTHORITIES

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

187735047.5

*Roberts v. Randy LL Corp.*,
ECF No. 81, slip op................................................................................................24

*Roberts v. Randy LL Corp.*,
No. 3:24-cv-00523-HZ, ECF No. 81 (D. Or. Sept. 24, 2025) .....................................9

*Sedima, S.P.R.L. v. Imrex Co. Inc.*,
473 U.S. 479 (1985)...............................................................................................10

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) ...............................................................16, 18, 21, 22

*Turner v. Cook*,
362 F.3d 1219 (9th Cir. 2004) ..............................................................................19

*United States v. Green*,
592 F.3d 1057 (9th Cir. 2010) ..............................................................................15

*United States v. Koziol*,
993 F.3d 1160 (9th Cir. 2021) ..............................................................................11

*United States v. Pendergraft*,
297 F.3d 1198 (11th Cir. 2002) ............................................................................14

*United States v. Takhalov*,
827 F.3d 1307 (11th Cir. 2016), *overruled in part by Kousisis v. United States*,
605 U.S. 114 (2025)...............................................................................................18

*United States v. Weimert*,
819 F.3d 351 (7th Cir. 2016) ................................................................................17

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ..............................................................................20

*Woody v. Fred Meyer Stores, Inc.*,
2024 WL 261755 (D. Or. Jan. 24, 2024) ...............................................................24

**STATUTES**

18 U.S.C. § 1961.......................................................................................................10

42 U.S.C. § 12101(a)(2), (b)(2) ...................................................................................3

42 U.S.C. § 12182(b)(2)(iv)–(v).................................................................................3

42 U.S.C. §§ 12188(a)(2), 12205...............................................................................23

42 U.S.C. § 12205......................................................................................................22

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

iii-    TABLE OF AUTHORITIES

187735047.5

OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ...............................................................1, 3, 10

Local Rule 7-1................................................................................................................1

*The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA
   Litigation*, 54 UCLA L. Rev. 1, 10 (2006) ...............................................................3

Rule 9(b) ...........................................................................................2, 10, 15, 20

Rule 11 ...........................................................................................................2, 12, 14

iv-    TABLE OF AUTHORITIES

187735047.5

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

**LOCAL RULE 7-1 CERTIFICATION**

In compliance with Local Rule 7-1, the parties made a good faith effort through telephone conferences to resolve their disputes. The parties were unable to resolve the issues raised below.

**MOTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Wampler, Carroll, Wilson & Sanderson, P.L.L.C. and J. Luke Sanderson move to dismiss Plaintiffs' Amended Complaint with prejudice for failure to state a claim.

**INTRODUCTION**

The Americans with Disabilities Act ("ADA") is a landmark work of legislation intended to "eliminate discrimination against disabled individuals" and "integrate them 'into the economic and social mainstream of American life.'" *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). The ADA's primary mechanism for pursuing this goal is private litigation enforcement. The Ninth Circuit has thus repeatedly recognized the need "for committed individuals" like attorneys and their disabled clients "to bring serial litigation advancing" the ADA so that it can "yield its promise of equal access for the disabled." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175 (9th Cir. 2010).

Plaintiffs in this suit are business owners who violated the ADA and then found themselves face-to-face with its enforcement mechanisms. Although Plaintiffs' businesses were not ADA-compliant—and Plaintiffs make no effort to allege otherwise—they filed this putative class action seeking $240 million from the law firm Wampler, Carroll, Wilson & Sanderson, P.L.L.C. and attorney Luke Sanderson (together the "Wampler Parties") for using tools Congress provided to enforce ADA compliance. Plaintiffs base this demand on a single RICO claim premised on thousands of alleged "predicate acts" of wire fraud. According to Plaintiffs, the Wampler Parties

1- WAMPLER DEFENDANTS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

187735047.5

committed wire fraud by misrepresenting their clients' ADA injuries and standing to sue in draft complaints and demand letters sent to non-compliant businesses that form the putative class.

But if Plaintiffs believed the Wampler Parties misrepresented their clients' standing, the proper course of action was to move to dismiss or seek summary judgment in the resulting litigation. At most, if that litigation was so meritless as to be frivolous or brought in bad faith, Plaintiffs' remedy was to seek Rule 11 sanctions. But all Plaintiffs either settled or made improvements to remedy ADA violations on their properties. Moreover, when one of the Plaintiffs had concerns about the litigation conduct of Defendant Jessica Molligan, it sought and obtained sanctions within the litigation. Despite the opportunity to vindicate their rights through the normal adversarial process, Plaintiffs now attempt to spin a civil RICO class action out of that lone sanctions opinion across hundreds of successful ADA suits brought by several Defendants.

Plaintiffs' RICO claim fails at the outset for at least three reasons. *First*, federal courts across the nation have held that litigation misconduct cannot serve as RICO predicate acts of wire fraud. Courts instead address claims of litigation misconduct in the original lawsuit through sanctions. Otherwise, every unsuccessful lawsuit could spawn a retaliatory action under RICO.

*Second*, even if the Court were to ignore the bar on RICO claims for litigation misconduct, Plaintiffs have failed to adequately allege any predicate acts of wire fraud. Plaintiffs' allegations that the Wampler Parties misrepresented their clients' standing to pursue ADA claims ignore ADA standing requirements and fail to allege materiality or scienter. Plaintiffs' allegations that local counsel lacked settlement authority are not pled against the Wampler Parties and do not constitute a pattern of racketeering activity. And Plaintiffs' undifferentiated allegations about the "thousands" of demand letters sent to non-compliant businesses do not satisfy Rule 9(b)'s heightened pleading standard for fraud.

2-   WAMPLER DEFENDANTS MOTION TO DISMISS
      PLAINTIFFS' AMENDED COMPLAINT

187735047.5

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

*Third*, the Supreme Court's *Noerr-Pennington* doctrine protects the First Amendment right to petition by immunizing parties for conduct (including litigation) designed to petition the government for redress, subject to narrow exceptions that do not apply here. As Plaintiffs' claims are based on lawsuits and prelitigation demands, they are unconstitutional and cannot proceed.

Plaintiffs' RICO claim, along with their "incidental and ancillary" claim for an equitable accounting should be dismissed pursuant to Rule 12(b)(6).

## BACKGROUND

### I.  Private plaintiff litigation is the linchpin of meaningful ADA enforcement.

Congress passed the ADA to remedy society's tendency to "isolate and segregate individuals with disabilities" and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(a)(2), (b)(2). Discrimination includes the failure to "remove architectural barriers" or make reasonable accommodations if the barrier is not readily removable. 42 U.S.C. § 12182(b)(2)(iv)–(v).

Due to the relatively few government enforcement actions against places of public accommodation,[1] "private enforcement suits 'are the primary method of obtaining compliance with the [ADA].'" *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039-40 (9th Cir. 2008) (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)). Despite shouldering this responsibility, private plaintiffs are limited to equitable relief and attorneys' fees—not monetary damages. *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002). The lack of damages makes litigation risky and "removes the incentive for most disabled persons who are

---

[1] Samuel R. Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 10 (2006)

<table>
<tr><td>3-   WAMPLER DEFENDANTS MOTION TO DISMISS<br>PLAINTIFFS' AMENDED COMPLAINT</td><td><b>Ashurst Perkins Coie US LLP</b><br>1120 N.W. Couch Street, Tenth Floor<br>Portland, Oregon 97209-4128<br>Phone:  +1.503.727.2000<br>Fax:  +1.503.727.2222</td></tr>
</table>

injured by inaccessible places of public accommodation to bring suit under the ADA." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007) (per curiam).

Despite the need for private enforcement, ADA defendants often use derogatory and misleading phrases like "tester" plaintiffs, "professional" plaintiffs, or "serial litigants" to refer to individual plaintiffs pursuing ADA enforcement. Yet, as the Ninth Circuit has noted, "for the ADA to yield its promise of equal access . . . it [is] *necessary and desirable* for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." *Id.* (emphasis added). These pejorative labels are also legally meaningless because tester plaintiffs unequivocally "have tester standing to sue." *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023).

The Wampler Parties initiated more than 4,000 ADA enforcement actions across the country and were "successful in requiring the property owners to get in compliance with the ADA" in most of those matters. Am. Compl. ¶ 59; *Slevin v. AB Hollywood, LLC*, No. 3:23-cv-01404-YY, slip op. at 13 (D. Or. Mar. 31, 2026). As one federal court explained, the Wampler Parties' ADA enforcement work was "a public service," noting that the Wampler Parties are "not doing this to get rich . . . . [they're] doing this because it's an important part of helping people have access." *Grey v. Salameh*, No. 2:24-cv-02363-JPM-cgc, ECF No. 17 at 21(W.D. Tenn. Sept. 11, 2024).

In this case, no named Plaintiff alleges that its property was ADA-compliant. To the contrary: Plaintiff Baek undertook "tens of thousands of dollars" in construction to remediate the conditions identified in the demand letter (Am. Compl. ¶ 152); Plaintiff The Penney Kim Trust paid to settle (*Id*. ¶¶ 140–41); Plaintiff Abraham Lee 4511 entered into a settlement agreement (*Id*. ¶ 142); and Plaintiff AB Hollywood made multiple remedial improvements to its property (*Slevin v. AB Hollywood*, ECF No. 85, slip op. at 16–17).

4-    WAMPLER DEFENDANTS MOTION TO DISMISS
      PLAINTIFFS' AMENDED COMPLAINT

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

## II. Plaintiffs assert that the Wampler Parties' ADA enforcement actions are an illegal racketeering scheme.

Plaintiffs' lawsuit arises from ADA enforcement actions taken by the Wampler Parties and their associated local counsel against Plaintiffs and other putative class members. The Amended Complaint asserts two causes of action—violations of the federal RICO statute predicated on alleged wire fraud, and a claim for equitable accounting—and seeks $240 million in damages on behalf of a putative nationwide class. Am. Compl. ¶ 13, Prayer for Relief at (b). Plaintiffs allege that the Wampler Parties' demand letters and draft complaints knowingly and materially misrepresented their disabled clients' "ADA injury and standing" to sue. *Id*. ¶ 189. Plaintiffs also advance a separate theory that Ms. Molligan and other local counsel lacked settlement authority when communicating with certain Plaintiffs, rendering representations about that authority fraudulent. *Id*. ¶¶ 132–42.

According to the Amended Complaint, the Wampler Parties created a database identifying commercial properties with potential ADA violations related to the width of painted parking spaces, the angle of access ramps, the visibility of signage, and similar conditions. *Id*. ¶¶ 45–46. The Wampler Parties then allegedly contacted disabled individuals throughout the country to serve as potential plaintiffs in ADA litigation. *Id*. ¶ 47. Each client signed a Representation Agreement authorizing the attorneys to "file lawsuits in the U.S. District Court on [the client's] behalf involving claims for discrimination . . . [under] Title III of the Americans with Disabilities Act." *Id*. ¶ 48; *Slevin v. AB Hollywood, LLC*, No. 3:23-cv-01404-YY, ECF No. 49-2 at 1–2.

The Representation Agreement gave the attorneys "full authority to prepare, sign, and file all legal instruments, pleadings, drafts, authorizations, and papers as shall be reasonably necessary to commence, conduct, and conclude their representation." *Id*. The agreement also stated that the

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Wampler Parties would compensate the clients for "reasonable expenses incurred by the Client in an amount already agreed upon[,]" which was $200 in most cases. Am. Compl. ¶¶ 127–28, 131.

Plaintiffs allege that the Wampler Parties' ADA clients were apportioned a small number of properties to visit each month from the database, and were instructed to purchase an item, obtain a business card, and send a picture of themselves at the property along with a receipt. *Id*. ¶¶ 49–51. The clients then uploaded those photographs to the database via an online portal. *Id*. ¶ 51. After a client's visit, local counsel sent a demand letter to the property owner, attaching a draft complaint generated from a template prepared by the Wampler Parties. *Id*. ¶ 52.

Under the standard-form Co-Counsel Agreement between the Wampler Parties and local counsel, the Wampler Parties were "fully responsible for . . . the initial investigation of claims . . . , including the confirmation of the existence of architectural barriers as defined currently by the ADA." *Id*. ¶ 56. Based on that investigation, and "solely at the determination of [Defendant] Sanderson," the Wampler Parties would "prepare an appropriate Complaint . . . and electronically transmit same to Local Counsel." *Id*.

Local counsel's specified duty under the Co-Counsel Agreement was to "confer[] with counsel for the defendant property owner or the property owner, if unrepresented, in an attempt to achieve a settlement." *Id*. ¶ 57, Ex. 1 at 2. The demand letters requested that property owners remediate ADA violations and pay attorneys' fees in exchange for settlement. *Id*. ¶ 54. If the property owner refused to settle, local counsel filed the complaint in federal court. *Id*. ¶ 55.

Plaintiffs allege that the Wampler Parties told their disabled clients there was "no need for you to inspect anything . . . because that has already been done." *Id*. ¶¶ 5, 63, 67. Plaintiffs also allege that the disabled clients filed perjurious in forma pauperis ("IFP") applications by failing to disclose $200 reimbursements they received. *Id*. ¶¶ 113–22, 179. None of the identified IFP

6-  WAMPLER DEFENDANTS MOTION TO DISMISS
    PLAINTIFFS' AMENDED COMPLAINT

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

187735047.5

applications were filed in any lawsuit involving the named Plaintiffs; they involve entirely different proceedings. *Id*. ¶ 179.

### III.    The Wampler Parties' ADA enforcement actions largely succeeded; local counsel in *one case* was sanctioned.

Each of the Plaintiff's claims arise from ADA enforcement actions in which the Plaintiff received a demand letter to remedy ADA violations and pay attorneys' fees, and if the Plaintiff did not settle before litigation, Defendants filed an ADA suit against them. Am. Compl. ¶¶ 52–55. Despite claiming these enforcement actions were fraudulent, every named Plaintiff responded by making improvements to their property, settling the ADA case, or both:

- **Baek Family Partnership, LLC.** On August 25, 2023, Ms. Molligan sent a demand letter to Baek on behalf of Defendant Conner Slevin, alleging that Baek's property had "cracked pavement" and accessible parking that was not "adequately dispersed," and demanding a cash settlement and repairs within 90 days. *Id*. ¶¶ 147–49. Baek alleges it paid "tens of thousands of dollars to contractors" and incurred "days of limited access to the subject property because of excavation and construction." *Id*. ¶ 152. Mr. Slevin filed suit against Baek, and voluntarily dismissed the lawsuit after Ms. Molligan withdrew at Mr. Slevin's request. *Id*. ¶ 143; *Slevin v. Baek Family Partnership LLC*, No. 3:23-cv-01487-HZ, ECF No. 14.

- **The Penney Kim Trust.** On February 13, 2024, Ms. Molligan sent a demand letter to The Penney Kim Trust on behalf of Mr. Slevin, demanding remediation of ADA violations and "$9,500 in attorney fees and costs associated with this case," including "monitoring fees." Am. Compl. ¶¶ 54, 138. No lawsuit was ever filed; the Trust settled the claim. *Id*. ¶¶ 140–

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

41. Plaintiffs allege Ms. Molligan sent this letter "without the knowledge or approval of Slevin." *Id*. ¶ 139.

- **Abraham Lee 4511, LLC**. In 2023, Abraham Lee 4511 received two demand letters—one from local counsel Conner G. Spani PLLC and the other from Ms. Molligan—demanding remediation of ADA violations and attorneys' fees in connection with settlement of ADA claims brought on behalf of another client, Justin Burley-Beavers. *Id*. ¶¶ 54, 142. When Abraham Lee 4511 refused to settle, Ms. Molligan filed suit, which then resulted in a signed settlement agreement. *Id*. ¶ 142; *Burley-Beavers v. Abraham Lee 4511*, LLC, No. 3:23-cv-01411-HZ, ECF No. 15 (D. Or. Feb. 20, 2024). Ms. Molligan thereafter filed a breach-of-contract action in Oregon state court to collect on the settlement, but later voluntarily dismissed the action. Am. Compl. ¶ 142. The Amended Complaint does not allege that Abraham Lee 4511's property was ADA compliant, that Burley-Beavers did not visit the property, or that any specific representation in the demand letter was false.

- **AB Hollywood, LLC.** Mr. Slevin visited the AB Hollywood property in November 2022, entered two businesses at the shopping center, and made purchases. *Id*. ¶ 76; *Slevin v. AB Hollywood, LLC*, ECF No. 85, slip op. at 1. In August 2023, Ms. Molligan sent a demand letter requesting $13,000 in attorneys' fees and seeking repairs. *Slevin v. AB Hollywood*, ECF No. 60-2 at 1–2. Afterward, she filed multiple complaints. Am. Compl. ¶ 143. Plaintiffs allege that the second complaint falsely claimed the "visible upright signage" in the parking lot was "faded and unintelligible," despite photographs taken by Mr. Slevin during his visit purportedly showing otherwise. Am. Compl. ¶ 76. The court ruled Mr. Slevin had standing "based upon at least one barrier that he personally encountered— namely, the conditions of the parking lot and retail accessways." *Slevin v. AB Hollywood*,

8-   WAMPLER DEFENDANTS MOTION TO DISMISS
     PLAINTIFFS' AMENDED COMPLAINT

187735047.5

*LLC*, No. 3:23-cv-01404-YY, ECF No. 23 at 4–5 (D. Or. May 7, 2024). The case was closed pursuant to a stipulated dismissal in July 2024. *Id.*

Out of the approximately 4,000 ADA enforcement actions that the Wampler Parties pursued, Plaintiffs identify only a single instance—the AB Hollywood case—in which any court found impropriety. That single instance was based on a breakdown of client communication and lack of reasonable investigation. *Slevin v. AB Hollywood, LLC, ECF No. 85, slip op.* at 25–26, 29, 33, 46, *aff'd*, ECF No. 88 (May 25, 2026). On March 31, 2026, Magistrate Judge You issued an Opinion and Order finding that Ms. Molligan's conduct amounted to bad faith and was sanctionable under the court's inherent power. *Id.*

Judge You's bad-faith finding centered on Ms. Molligan's failure to discuss the case with her client at multiple stages of the litigation. Due to this lack of communication and associated issues, the court found that Ms. Molligan "brought this action for the improper purpose of extracting an attorney fee settlement." *Id.* Judge You expressly limited the analysis to the "conduct in this particular case," and she did not find any intentional fraud or misrepresentations or that the suit lacked a legal or factual basis. *Id.* at 3, 26, 32, 42 (stating it was "not clear" "[w]hether Molligan was intentionally misleading"; and that imposing sanctions "does not require that the legal and factual basis for the action prove totally frivolous"). Nor did Judge You's sanctions order fault Ms. Molligan for reimbursing a client's travel and expenses to visit a property or for using the Wampler database to identify properties with deficiencies. Indeed, another court in this District denied a motion for sanctions against Ms. Molligan in a case involving the same Wampler Representation Agreements, the same $200 client reimbursement arrangement, and the same process for bringing ADA claims. *Roberts v. Randy LL Corp.*, No. 3:24-cv-00523-HZ, ECF No. 81 (D. Or. Sept. 24, 2025).

9-     WAMPLER DEFENDANTS MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

187735047.5

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Following Judge You's sanctions ruling, Plaintiffs filed this putative class action, alleging claims for violation of RICO, negligent misrepresentation, abuse of process, and equitable accounting. After obtaining new counsel, Plaintiffs amended their initial complaint to remove their claims for negligent misrepresentation and abuse of process. *Compare* Compl. *with* Am. Compl.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint may be dismissed for failure to state a claim for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

With respect to fraud claims, plaintiffs face the heightened pleading standard of Rule 9(b), which requires allegations to be stated with particularity: "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004) (internal citations omitted). On a motion to dismiss a class action complaint, courts consider only the named plaintiffs' allegations. *Little v. Grand Canyon Univ.*, 516 F. Supp. 3d 958, 963 (D. Ariz. 2021).

## ARGUMENT

### I.  Plaintiffs cannot state a RICO claim.

A private party RICO claim requires (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to the plaintiff. *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). "Predicate acts" are limited to those listed in 18 U.S.C. § 1961. *Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 495 (1985). To allege a "pattern," Plaintiffs must allege multiple predicate acts that are both "related" and "continuous." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

10-  WAMPLER DEFENDANTS MOTION TO DISMISS
     PLAINTIFFS' AMENDED COMPLAINT

187735047.5

As explained below, Plaintiffs do not adequately allege that the Wampler Parties engaged in the predicate act of wire fraud because (1) allegations of litigation misconduct on their own do not constitute wire fraud; and (2) even if they could, Plaintiffs have failed to adequately allege the required pattern of fraudulent activity. Moreover, (3) Plaintiffs' RICO claim is barred by the *Noerr-Pennington* doctrine, which immunizes the Wampler Parties' petitioning activities.

### A.    The litigation misconduct Plaintiffs allege cannot serve as RICO predicate acts of wire fraud.

Plaintiffs' RICO claim fails because "allegations of frivolous, fraudulent, or baseless litigation activities–without more–cannot constitute a RICO predicate act." *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018). Circuit courts from around the country, including the First, Second, Fifth, Tenth, and Eleventh Circuits, have all adopted this policy. *Id.* "[D]istrict courts from around the country" including in the Ninth Circuit have followed suit, finding that "litigation activities will not serve as predicate acts [for a RICO claim] unless there are allegations of wrongdoing outside of the litigation, such as out-of-court activity or corruption." *Acres Bonusing, Inc. v. Ramsey*, 2022 WL 17170856, at *11 (N.D. Cal. Nov. 22, 2022) (collecting cases). "While the Ninth Circuit has not squarely addressed this issue," its "reasoning in *United States v. Koziol* as well as other circuits' discussion of this issue" confirms that "[l]itigation activities alone generally cannot serve as predicate acts for civil RICO claims." *Id.* at *10-13 (discussing the Ninth Circuit's recognition of policy reasons "that counsel caution in civil RICO claims" in *United States v. Koziol*, 993 F.3d 1160 (9th Cir. 2021)).

This is for good reason. "[I]f filing litigation documents could form the basis for a RICO action, 'every unsuccessful lawsuit could spawn a retaliatory action,' which would 'inundate the federal courts with procedurally complex RICO pleadings,' 'engender wasteful satellite litigation,'

11-    WAMPLER DEFENDANTS MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

187735047.5

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

and spawn 'ad infinitum litigation with each party claiming that the opponent's previous action was malicious and meritless.'" *Acres*, 2022 WL 17170856, at *11 (quoting *Kim*, 884 F.3d at 104 (2d Cir. 2018)). "This cascade of litigation could 'chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts.'" *Id.* (quoting *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 173 (E.D.N.Y. 2010)). If the claims were frivolous, then the proper course of action is a claim for malicious prosecution, abuse of process, or a motion for sanctions under Rule 11 in the underlying action. *Neal v. Second Sole of Youngstown, Inc.*, 2018 WL 340142, at *5 (N.D. Ohio Jan. 9, 2018). "But neither state tort claims nor violation of Rule 11 qualify as predicate offenses under RICO" and federal courts "are not so easily fooled by artful pleading; they evaluate claims by what they allege, not what they are labeled." *Id*.

Following this line of cases, in *Ghandi v. Ehrlich*, 2020 WL 5633416 (N.D. Ga. Sept. 21, 2020), the court dismissed a RICO claim virtually identical to Plaintiffs' claim here. There, the plaintiffs asserted that defendant lawyers and law firms who had filed 558 ADA cases "formed a criminal enterprise using the ADA to initiate numerous federal cases based on false allegations of disability, injury, and standing to collect quick settlements from Georgia property owners." *Id.* at *1. The plaintiffs in *Ghandi* asserted that the defendants committed predicate acts of mail and wire fraud based on these "fraudulent litigation activities." *Id.* at *4. The court dismissed the RICO claim, emphasizing that courts have "the ability . . . to deal with [claims of fraudulent litigation activity] in the original lawsuit" through "sanction[s] . . . for only the most frivolous of actions." *Id.* at *4-5 (quoting *United States v. Pendergraft*, 297 F.3d 1198, 1206–07 (11th Cir. 2002)). The court not only dismissed the RICO claim but also granted the *defendants'* motion for sanctions,

12-    WAMPLER DEFENDANTS MOTION TO DISMISS
         PLAINTIFFS' AMENDED COMPLAINT

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

187735047.5

finding the RICO claim "frivolous" and describing it as "a retaliatory action brought against disabled plaintiffs and their attorneys . . . ." *Id.* at *8.

The District of Colorado reached a similar conclusion in *Abbondanza v. Weiss*, 2022 WL 889099 (D. Colo. Mar. 24, 2022). There, plaintiff restaurant owners brought RICO claims against ADA plaintiff attorneys, alleging the defendants "operated as a [wire fraud] conspiracy to file baseless ADA access lawsuits against small businesses for the purpose of obtaining quick settlements." *Id.* at *2. The plaintiffs alleged irregularities similar to those alleged here, including that a paid ADA consultant "never visited the restaurant in person. *Id*. The court granted summary judgment to the defendants, holding that "[c]onsistent in the case law is the strong reluctance to recognize litigation activities [including prelitigation demand letters] as mail and wire fraud even if undertaken in the pursuit of baseless or bad faith litigation." *Id.* at *15. The court explained that "[a]llegations of frivolous litigation, perjury, or deceit upon the court instead should be raised in the civil action itself . . . ." *Id.* (citing *Curtis*, 758 F. Supp. 2d at 173–74).

Plaintiffs' RICO claim in this case is based on the same type of conduct at issue in *Ghandi* and *Abbondanza*: demand letters, court filings, and settlements in ADA enforcement actions. Like the plaintiffs in those cases, Plaintiffs here allege that the Wampler Parties sent demand letters and draft complaints that misrepresented their clients' ADA injuries and standing to sue. Am. Compl. ¶¶ 44, 172, 182, 189. Like the plaintiffs in *Ghandi*, Plaintiffs here do not allege—and cannot allege—that their businesses were ADA compliant; indeed, they admit making repairs to their properties in response to the Wampler Parties' enforcement efforts. *Id*. ¶¶ 150–52. And like the plaintiffs in *Abbondanza*, Plaintiffs here question whether the disabled clients actually encountered the ADA barriers alleged in the complaints. *Id*. ¶¶ 63, 67, 96–106.

13- WAMPLER DEFENDANTS MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

This is precisely the type of litigation conduct that courts have consistently held *cannot* support a RICO claim. If there was a problem with that conduct, then the proper remedy was a motion for sanctions under Rule 11, which Plaintiff AB Hollywood filed against Ms. Molligan. *Slevin v. AB Hollywood*, 23-CV-01404-YY, ECF No. 26. AB Hollywood did not pursue sanctions against the Wampler Parties, and Plaintiffs cannot point to any other sanctions ruling in the hundreds of ADA suits the Wampler Parties were involved in.

Plaintiffs cannot now bootstrap those same litigation-conduct allegations into a $240 million RICO claim. Permitting such spin-off litigation is precisely what courts seek to prevent by holding that litigation activities cannot constitute RICO predicate acts. *Acres*, 2022 WL 17170856, at *11; *Ghandi*, 2020 WL 5633416, at *8. Instead, as the Eleventh Circuit put it, "We trust the courts, and their time-tested procedures, to produce reliable results, separating validity from invalidity, honesty from dishonesty. While our process is sometimes expensive, and occasionally inaccurate, we have confidence in it." *Pendergraft,* 297 F.3d at 1206; *see also Neal*, 2018 WL 340142, at *3 (citing *Pendergraft* and noting that "we encourage parties to turn to the courts to resolve their disputes and decide what complaints are frivolous" through the sanctions process rather than through RICO claims).

The Court should refuse Plaintiffs' attempt to avoid that process by dismissing their RICO claim against the Wampler Parties.

**B. Plaintiffs have not adequately alleged any "predicate acts" of wire fraud.**

Even if the Court were to ignore the bar on RICO claims for litigation misconduct, Plaintiffs have also failed to adequately allege any predicate acts of mail or wire fraud. In addition, Plaintiffs' Amended Complaint consists of undifferentiated allegations that "thousands" of

14- WAMPLER DEFENDANTS MOTION TO DISMISS
   PLAINTIFFS' AMENDED COMPLAINT

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

demand letters contained false statements, which does not satisfy Rule 9(b)'s heightened pleading requirements for fraud.

### 1. Plaintiffs' allegations do not establish the elements of wire fraud.

To establish wire fraud, Plaintiffs must allege: (1) a scheme to defraud; (2) use of interstate wire communications in furtherance of the scheme; (3) specific intent to defraud; and (4) a material misrepresentation. *United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010); *Neder v. United States*, 527 U.S. 1, 25 (1999). Plaintiffs attempt to support these elements by alleging that: (1) the Defendants demand letters and draft complaints falsely claimed the existence of ADA injuries and standing; and (2) Ms. Molligan misrepresented her settlement authority to the named Plaintiffs. Neither category states a claim for wire fraud against the Wampler Parties.

### (a) Defendants' demand letters and draft complaints do not contain actionable misrepresentations.

To support their RICO claim, Plaintiffs allege that an August 2023 demand letter to Baek "falsely claim[ed] the existence of an ADA injury, knowing that the [disabled client] had not actually reported encountering any specific condition on the Plaintiff's property and had not even been asked to look for any specific condition." Am. Compl. ¶ 175. Plaintiffs also allege that a demand letter and complaint filed against AB Hollywood contained false allegations that Mr. Slevin "encountered or observed the barriers to access" and that he was "deterred from patronizing" the property, when in fact the Wampler Parties had instructed Mr. Slevin that "[t]here is no need for you to inspect anything because that has already been done." *Id*. ¶¶ 67, 71-73, 76.

These allegations fail to plead a cognizable instance of wire fraud for multiple reasons. *First*, Plaintiffs effectively allege that the Wampler Parties misrepresented their clients' legal standing to file suit—a representation of law. "It is well established . . . that misrepresentations of

15- WAMPLER DEFENDANTS MOTION TO DISMISS
    PLAINTIFFS' AMENDED COMPLAINT

187735047.5

. . . law are not actionable as fraud, including under the mail and wire fraud statutes." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006).

*Second*, the Defendants accurately represented that their clients had standing under the "deterrent effect doctrine." "As [the Ninth Circuit has repeatedly] held, once a disabled plaintiff has encountered a barrier violating the ADA [accessibility guidelines related to their disability], that plaintiff will have a 'personal stake in the outcome of the controversy . . . .'" *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 947 (9th Cir. 2011). A disabled client's personal inspection and notation of these barriers is not required. *Id.* at 951. Instead, "[o]nce a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing." *Id.* at 947 (quoting *Doran*, 524 F.3d at 1042 n.5). That is true even where the property is a significant distance from the disabled individual's residence. *See Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002) (plaintiff had standing to bring ADA enforcement claim against grocery store 70 miles from his house).

"A plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury.'" *Id.* at 1138. In other words, disabled clients who encounter or become aware of ADA violations that interfere with access to a place of public accommodation and expect continuing noncompliance have standing. *See Doran*, 524 F.3d at 1042; *Pickern*, 293 F.3d at 1138. It is not necessary for the plaintiff to visit the location any specific number of times or continue encountering the violations. *See id.*

Plaintiffs' specific allegations related to the Baek property confirm that Mr. Slevin visited Baek's property, purchased an item, and encountered the parking lot and access routes. Am.

16-    WAMPLER DEFENDANTS MOTION TO DISMISS
         PLAINTIFFS' AMENDED COMPLAINT

187735047.5

Ashurst Perkins Coie US LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Compl. ¶¶ 47-51. And Plaintiffs' allegations also confirm that Mr. Slevin visited AB Hollywood's property and took photographs during his visit. *Id*. Compl. ¶ 76. If Mr. Slevin visited the property as a person with a disability and the property had ADA violations related to that disability—which Plaintiffs do not dispute—then he "encountered" those barriers, and doing so deterred him from revisiting the property under the deterrent effect doctrine. The Defendants accurately represented their clients' standing.

*Third*, even if particular details in demand letters contained technical inaccuracies, Plaintiffs have not adequately alleged that they were *material*. A misrepresentation is material only if it "has a natural tendency to influence, or is capable of influencing, the decision of the decision making body to which it was addressed." *Neder*, 527 U.S. at 16. Here, the only issues that could have been material to Baek's or AB Hollywood's decisions to settle or remediate their properties were whether: (1) the properties were noncompliant with the ADA; and (2) the claimant was willing and able to pursue the ADA violations in court. Plaintiffs do not—and cannot—allege that these representations were false. Instead, Plaintiffs' allegations demonstrate that barriers actually existed, the disabled client visited the property and encountered them (deterring future patronage), and that Plaintiffs remediated those barriers. Statements about how client observations were documented, how many times the clients planned to return, the nature of the specific barriers, and other issues were immaterial to the clients' standing under the deterrent effect doctrine.

*Fourth*, Plaintiffs have not alleged any facts supporting the required element of *scienter*— specific intent to defraud. *See United States v. Weimert*, 819 F.3d 351, 355 (7th Cir. 2016). The Amended Complaint alleges generally that the Wampler Parties "knew or should have known" that certain statements were false. (Am. Compl. ¶¶ 60-61, 75.) But "should have known" is a negligence standard, not the specific intent required for wire fraud. *See United States v. Takhalov*,

17-    WAMPLER DEFENDANTS MOTION TO DISMISS
       PLAINTIFFS' AMENDED COMPLAINT

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

187735047.5

827 F.3d 1307, 1313 (11th Cir. 2016), *overruled in part by Kousisis v. United States*, 605 U.S. 114 (2025). Moreover, false statements regarding the Plaintiffs' own ADA violations could not be made with intent to deceive because a party cannot be misled by false statements regarding *its own* conduct. *Sosa*, 437 F.3d at 941. Plaintiffs knew—or could certainly verify—whether their properties were ADA compliant.

**(b) Plaintiffs' allegations regarding local counsel's settlement authority do not state a claim for wire fraud against the Wampler Parties.**

Plaintiffs also attempt to support their wire fraud theory by alleging a lack of settlement authority to resolve claims against property owners. Those allegations are not leveled against the Wampler Parties.

Instead, Plaintiffs allege that local counsel "confer[red] with counsel for the defendant property owner or the property owner, if unrepresented, in an attempt to achieve a settlement." Am. Compl. ¶ 57. With respect to the Penney Kim Trust, Plaintiffs allege that Ms. Molligan sent a demand letter "requesting $9,500 in attorney fees and costs associated with this case" and that this letter "was sent without the knowledge or approval of Slevin." *Id*. ¶¶ 138-39. With respect to Abraham Lee 4511, LLC, Plaintiffs allege that it "received two separate demand letters—one from Conner G. Spani PLLC, and the other from Ms. Molligan—demanding the payment of attorneys' fees in connection with a settlement of purported claims for ADA violations to be brought by [client] Burley-Beavers." *Id*. ¶ 142. When Abraham Lee 4511 "did not accede to that demand, Defendant Molligan brought suit on Burley-Beavers' behalf." *Id.*

Plaintiffs do not allege that the Wampler Parties directed local counsel to send demand letters without consulting the clients or that the Wampler Parties engaged in settlement discussions

18-    WAMPLER DEFENDANTS MOTION TO DISMISS
       PLAINTIFFS' AMENDED COMPLAINT

187735047.5

with property owners. Plaintiffs' allegations about local counsel's lack of settlement authority accordingly do not state a claim for wire fraud against the Wampler Parties.

In addition, Plaintiffs' allegations concerning lack of settlement authority do not constitute a "pattern of racketeering activity." To establish the "pattern" element of a RICO claim, a plaintiff must allege at least two predicate acts that are: (1) related; and (2) amount to or pose a threat of continued criminal activity. *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). This continuity requirement is designed to eliminate "RICO actions against perpetrators of isolated or sporadic acts." *Metaxas v. Lee*, 503 F. Supp. 3d 923, 941 (N.D. Cal. 2020) (*citing Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 193 (9th Cir. 1987)). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc.,* 492 U.S. 229, 242 (1989).

Plaintiffs' allegations are based on a *single case*—AB Hollywood—where Mr. Slevin had revoked Defendants' settlement authority. There are no allegations in the Amended Complaint that this issue continued over any significant period of time; nor could there be, as Ms. Molligan and the Wampler Parties' representation of Mr. Slevin ended shortly afterward. Am. Compl. ¶ 143. Without representing Mr. Slevin—or other clients who revoked Defendants' settlement authority—going forward, there is no threat of future impropriety. Accordingly, Plaintiffs have not alleged a pattern of racketeering activity based on any representations of settlement authority.

**2. Plaintiffs' undifferentiated allegations about "thousands" of demand letters do not satisfy Rule 9(b)'s heightened pleading standard.**

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Plaintiffs allege broadly that the Wampler Parties committed "more than four thousand predicate acts of wire fraud through the use of interstate communications containing materially false and misleading statements." Am. Compl. ¶ 172. These generic allegations fail to satisfy Rule 9(b)'s requirement that fraud be pled with particularity. "[W]hen mail fraud and wire fraud are the alleged RICO predicate acts, a plaintiff must meet heightened pleading standards under Rule 9(b) for those acts." *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd*, 790 F. Supp. 2d 1134, 1148-49 (CD. Cal. 2011). Rule 9(b) requires that the plaintiff "state with particularity the circumstances constituting fraud," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiffs cannot satisfy this standard by alleging that some unspecified number of demand letters sent to unspecified recipients contained unspecified false statements. The Amended Complaint identifies only a handful of specific communications relevant to ADA enforcement suits against them, and as shown above, none of those communications contains any actionable misrepresentation. Plaintiffs' undifferentiated allegations about "thousands" of other demand letters should be disregarded. *See Killa Bees Distribution LLC v. Left Coast Fin. Sols., Inc.*, 2025 WL 3056657, at *10 (D. Or. Oct. 14, 2025), *report and recommendation adopted*, 2025 WL 3055771 (D. Or. Oct. 31, 2025) (granting motion to dismiss RICO claim because plaintiff "lump[ed] multiple defendants together" and did not plead its RICO claim with particularity).

**C. Plaintiffs' RICO claim is independently barred by the *Noerr-Pennington* doctrine.**

Even if Plaintiffs' Amended Complaint could make out a cognizable RICO claim, any such claim would be barred by the First Amendment pursuant to the *Noerr-Pennington* doctrine.

**1.    The underlying ADA cases are petitioning activities protected by the First Amendment under *Noerr-Pennington*.**

20- WAMPLER DEFENDANTS MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

187735047.5

The First Amendment guarantees "the right 'to petition the Government for a redress of grievances.'" *Adidas Am., Inc. v. TRB Acquisitions LLC*, 2017 WL 337983, at *3 (D. Or. Jan. 23, 2017) (quoting U.S. Const. Amend. I). To ensure robust protection of that right, the Supreme Court has long held that parties are immune from statutory liability "for engaging in conduct (including litigation) aimed at influencing decision making by the government." *Id.* (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014)); *see also Sosa*, 437 F.3d at 929 ("Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct."). The *Noerr-Pennington* doctrine is broad and "stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause," including RICO claims. *Sosa*, 437 F.3d at 931.

In *Sosa*, the Ninth Circuit applied *Noerr-Pennington* to dismiss RICO claims predicated on tens of thousands of pre-litigation demand letters, holding that "RICO and the predicate statutes at issue here do not permit the maintenance of a lawsuit for the sending of a prelitigation demand to settle legal claims that do not amount to a sham." *Id.* at 942. The court stressed that "RICO does not unambiguously include the presuit demand letters in this case within the scope of conduct it enjoins, so we decline to give it such a broad construction." *Id.* The court further emphasized that "[p]receding the formal filing of litigation with an invitation to engage in negotiations to settle legal claims is a common, if not universal, feature of modern litigation," and restricting demand letters "would render the entire litigation process more onerous, imposing a substantial burden on a party's ability to seek redress from the courts." *Id.* at 936.

Plaintiffs' RICO claim rests entirely on demand letters and the filing of ADA lawsuits—precisely the type of conduct *Sosa* recognizes as constitutionally protected under *Noerr-*

21-    WAMPLER DEFENDANTS MOTION TO DISMISS
       PLAINTIFFS' AMENDED COMPLAINT

187735047.5

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

*Pennington*. Am. Compl. ¶¶ 44, 172, 175, 182. Those demand letters sought (1) changes to Plaintiffs' properties to bring them into ADA compliance and (2) payment of attorneys' fees authorized by 42 U.S.C. § 12205. *Id*. ¶ 54. Claims arising from prelitigation demand letters and the filing of lawsuits are "'squarely protected' by the *Noerr-Pennington* doctrine." *Sosa*, 437 F.3d at 934–35; *see also Adidas Am.*, 2017 WL 337983, at *3–4. Accordingly, even if Plaintiffs' RICO claim were otherwise adequately pleaded, it would still be barred.

### 2.    The "sham litigation" exception to *Noerr-Pennington* does not apply.

The Ninth Circuit recognizes three narrow categories of "sham litigation" exempt from *Noerr-Pennington* protections: (1) an objectively baseless lawsuit brought for an unlawful purpose; (2) a series of lawsuits brought without regard to the merits and for an unlawful purpose; and (3) intentional misrepresentations to the court that deprive the litigation of its legitimacy. *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060, 1062–63 (9th Cir. 1998); *Sosa*, 437 F.3d at 938. Plaintiffs' allegations do not meet any of these three categories.

Plaintiffs cannot satisfy the first sham litigation exception because the Wampler Parties' ADA claims were not objectively baseless or unlawful. An "objectively baseless" claim is one where "no reasonable litigant could realistically expect success on the merits." *Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 932 (9th Cir. 2024) (quoting *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). The Amended Complaint's allegations foreclose any baselessness finding: Baek admits making repairs (Am. Compl. ¶ 152); AB Hollywood "repainted the parking lot markings and moved the accessible parking space" after Mr. Slevin's visit, *Slevin v. AB Hollywood, LLC*, ECF No. 85, slip op. at 41; and The Penney Kim Trust settled (Am. Compl. ¶ 140). As the Ninth Circuit has held, "settlement indicates a lawsuit is not objectively baseless." *Relevant Grp.*, 116 F.4th at 932. Even in cases where RICO defendants have "lost at every stage

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

of the [underlying] proceeding," courts should refuse to "engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation." *Liberty Lake Invs., Inc. v. Magnuson*, 12 F.3d 155, 157–58 (9th Cir. 1993).

Plaintiffs' tester-standing theory likewise fails to establish baselessness. For the reasons addressed above in Section B.1.a, the Wampler Parties' disabled clients had standing under the Ninth Circuit's liberal jurisprudence, which does not require clients to inspect or document barriers they encounter, nor require specific proof of the number of planned return visits. *Doran*, 524 F.3d at 1039 (recognizing "broad view of constitutional standing in civil rights cases" under the ADA). The Wampler Parties at least had "an objectively reasonable basis for believing their clients had standing," which is all that is required under *Noerr-Pennington*. *Liberty Lake*, 12 F.3d at 157.

Nor did the Wampler Parties have any "unlawful" purpose. The demand letters sought changes to properties and payment of attorneys' fees (Am. Compl. ¶ 54)—the exact relief Congress authorized under the ADA. 42 U.S.C. §§ 12188(a)(2), 12205. Seeking that statutory relief cannot, as a matter of law, constitute the "unlawful purpose" required to strip away *Noerr-Pennington* immunity. *Liberty Lake*, 12 F.3d at 159–60 (evidence that a party "had decided to sue primarily for the benefit of collateral injuries inflicted through the use of legal process" is "immaterial" absent objective baselessness).

Plaintiffs cannot meet the second sham litigation exception either (filing a series of lawsuits brought without regard to the merits and for an unlawful purpose). The Amended Complaint's allegations affirmatively refute any indifference to the merits of the Wampler Parties' ADA claims: Plaintiffs made repairs or settled in every case. Multiple courts have declined to find bad faith or award attorney fees when examining the Wampler parties' ADA enforcement model. *Roberts v. Randy LL Corp.*, ECF No. 81, slip op. at 17, 19 (denying sanctions and finding no evidence of bad

23- WAMPLER DEFENDANTS MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

187735047.5

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

faith); *Jordan v. Joe B. Beasley & Assocs., L.P.*, No. 3:23-cv-00496, ECF No. 70, R& R at 10–11 (M.D. Tenn. June 24, 2025) (recommending denial of attorneys' fees). The Wampler Parties' ADA claims simply do not reflect "indifference to the merits" under the far more demanding *Noerr-Pennington* standard.

The third sham litigation exception (intentional misrepresentations to the court that deprive the litigation of its legitimacy) is also inapplicable. This exception is "limited to misrepresentations respecting the substance of the claim that show that the party's litigation position had no objective basis." *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2020 WL 5239856, at \*9 (C.D. Cal. Aug. 3, 2020); *Liberty Lake*, 12 F.3d at 159. For the reasons set forth in Section B.1.a, there were no intentional misrepresentations. Any alleged inaccuracies appeared in pleadings and, as Judge You found, stemmed from pre-filing investigation conduct—not knowing fraud, especially by the Wampler Parties. *Slevin v. AB Hollywood, LLC*, ECF No. 85, slip op. at 31–32. Negligent pleading, even if it results in inaccurate allegations, does not satisfy the "knowing fraud" standard required to strip *Noerr-Pennington* immunity.

## II.    Plaintiffs' equitable accounting claim should be dismissed with their RICO claim.

An equitable accounting is available only in select circumstances where: (1) there is a trust; (2) there is a fiduciary relationship between the parties; (3) the accounting is incidental to other equitable relief; or (4) "the account is so complex that justice cannot be done without resort to the superior equipment of the equity court." *Woody v. Fred Meyer Stores, Inc.*, 2024 WL 261755, at \*6 (D. Or. Jan. 24, 2024) (citations omitted).

As Plaintiffs allege in their Complaint, their equitable accounting claim is "incidental and ancillary" to their RICO claim. Am. Compl. ¶ 194. Because Plaintiffs' RICO claim fails, there is no basis for them to obtain an equitable accounting, and that claim must be dismissed as well.

24- WAMPLER DEFENDANTS MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

## CONCLUSION

For the foregoing reasons, the Wampler Parties respectfully request that the Court grant this motion and dismiss Plaintiffs' claims against them with prejudice.

DATED: July 2, 2026.

ASHURST PERKINS COIE US LLP

By: */s/ Chad Colton*
Chad Colton, Bar No. 065774
Chad.Colton@ashurstperkins.com
David Watnick, Bar No. 223386
David.Watnick@ashurstperkins.com
Michael McCullough, Bar No. 225377
Michael.McCullough@ashurstperkins.com
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: (503) 727-2000

*Attorneys for Defendants Wampler, Carroll, Wilson & Sanderson, P.L.L.C. and J. Luke Sanderson*

25- WAMPLER DEFENDANTS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

**Ashurst Perkins Coie US LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

187735047.5